**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**YVONNE HARRIS,**

      **Plaintiff,**              **CIVIL ACTION NO. 14-CV-14409**

**vs.**                        **DISTRICT JUDGE GERALD E. ROSEN**

                               **MAGISTRATE JUDGE MONA K. MAJZOUB**

**DETROIT MEDICAL CENTER,**
**ANDRE TINSLEY, and DEBRA**
**BRADFORD, jointly and severally,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Yvonne Harris filed this action against Defendants Detroit Medical Center (DMC), Andre Tinsley, and Debra Bradford alleging that they violated the Family Medical Leave Act, 28 U.S.C. § 2601 et seq., by retaliating against her for taking leave under the FMLA and by interfering with her right to such leave. (Docket no. 1-1.) Before the Court is Defendants' Motion to Dismiss. (Docket no. 9.) Plaintiff filed a Response (docket no. 13), and Defendant Filed a Reply (docket no. 15.) Defendants' Motion has been referred to the undersigned for consideration. (Docket no. 11.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.    Recommendation**

For the reasons stated herein, Defendant's Motion to Dismiss [9] should be GRANTED. This matter should be dismissed in its entirety.

**II.    Report**

1

A.      Facts

Plaintiff began working for Defendant in May 2001 as a Patient Accounting Representative.  (Docket no. 1-1 at 2.)   In January 2003, she began reporting to Defendant Tinsley, the Director of Patient Accounting, and in late 2003, she began reporting directly to Defendant Bradford, Plaintiff's Unit Manager.  (*Id.* at 3.)  Plaintiff alleges that throughout her employment at DMC, she "enjoyed a record of above average work performances" and that she "received multiple pay increases after annual performance reviews from management."  (*Id.* at 2.) Defendants, however, have provided copies of Plaintiff's performance reports, which show consistent problems with the timeliness of assignments and in her ability to manage her work activities properly.[1]   (Docket no. 9-2.)

In 2007, Plaintiff began asking for FMLA leave through DMC's Disability Management Office (DMO)[2] to care for her mother.  Plaintiff's request was approved in 2007 and again in 2008 and 2009; her 2009 request expired in or around April 2010.  (*See* docket no. 1-1 at 3.)   In

---

[1]  Because the instant Motion is a Motions to Dismiss under Rule 12(b)(6), a determination of the same is limited to a review of Plaintiff's Complaint.   Nevertheless, documents provided by a defendant as part of a Motion to Dismiss may be considered by the Court without converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56 if the documents are referred to in the Complaint and are central to the plaintiff's claims.  *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim."); *Lupas v. United States Bank, N.A.*, No. 11-14584, 2012 WL 3758037, at *2-3 (E.D. Mich. Aug. 30, 2012) (concluding that the Court could proceed under Federal Rule of Civil Procedure 12(c) where the documents attached to defendant's motion were publicly available or were integral to the plaintiff's complaint).  Plaintiff refers to her "record of above average performance" in her Complaint and argues that her positive reviews undermine Defendants' contention that her termination was justified.

[2]  Although Plaintiff notes that this office is only "sometimes referred to as (sic) 'Disability Management Office.'" Plaintiff calls this office the Family Medical Leave Office and uses the acronym "FMLA."   (Docket no. 1-1 ¶12.) To avoid confusion with the Family Medical Leave Act (FMLA), the Court will refer to the DMC office as the Disability Management Office (DMO).

May 2010, Plaintiff sought another approval for FMLA leave through the DMO, noting that her mother's condition had deteriorated.   She provided the DMO with FMLA certification documents from her mother's physician.   (*Id.*)   In late May 2010, Plaintiff was informed by the DMO that her request for leave was denied because the paperwork she submitted did not include a physician's diagnosis for her mother; Plaintiff alleges that the diagnosis on the form was the same diagnosis that was approved by the DMO in 2007, 2008, and 2009.   (*Id.* ¶¶19, 21.)   Plaintiff contacted her mother's doctor and resubmitted the form with a clarified diagnosis in June 2010. (*Id.* ¶20.)   In late July 2010, Defendant Bradford notified Plaintiff that her FMLA request had been denied and wrote Plaintiff up for violating DMC's attendance policy.   (*Id.* ¶17.)

Plaintiff continued to follow up with the DMO and her supervisors regarding the status of her request, and on August 25, 2010,[3] she learned that her request was again denied, this time because "the Doctor had not stated a treatment plan which would support the FMLA certification for a serious health condition, nor did it state the frequency and duration of absences needed by Harris to provide care for her mother."   (*Id.* ¶¶22-23.)   Plaintiff was given until September 23, 2010 to resubmit the documents; Plaintiff resubmitted the documents on September 20, 2010.[4] (*Id.* ¶23.)

Plaintiff alleges that after submitting the documents on September 20, 2010, she contacted the DMO and her manager "on a daily basis" regarding the status of her claim.   (*Id.* ¶25.)   She

_____

[3] Plaintiff appears to have submitted her request on August 25, 2010.   (Docket no. 9-4 at 8-12.)

[4] Defendant has provided copies of Plaintiff's FMLA request documents and the DMO responses.   Although Plaintiff's Complaint implies that she received a response on August 25, 2010, the DMO response is dated September 14, 2010, which somewhat clarifies an internal inconsistency in Plaintiff's Complaint that she "was given 7 days to resubmit the FMLA document, no later than September 23, 2010."   (*Compare* docket no. 1-1 ¶23, *with* docket no. 9-4 at 3.)

3

found out, however, that the DMO was "in the process of moving to a new location," so her documents "were unavailable for review."   (*Id.* ¶26.)   On October 4, 2010, the DMO told Plaintiff that "her documents were will boxed up and was not sure when they would be able to examine them and get back to her."   (*Id.* ¶27 (internal quotations omitted).)

On December 22, 2010, Defendant Bradford issued Plaintiff three disciplinary actions for absenteeism, tardiness, and poor job performance ratings.   She also issued her a "final warning," which was to be in effect through December 22, 2011.   (*Id.* ¶28.)   Plaintiff was suspended and ultimately terminated on November 16, 2011.   (*Id.* ¶¶ 8, 31.)   Plaintiff alleges, however, that after her termination, in October 2013, she found out that her FMLA request had been approved by the DMO effective November 1, 2010.   (*Id.* ¶31.)   Plaintiff contends that before being issued the "final warning," she "had not received any formal written warning as to her alleged unsatisfactory work performance;" Bradford "did not provide [Plaintiff] with both verbal and written warning;" neither Bradford nor Tinsley "conducted any 'one on one' meetings with [Plaintiff] to discuss her job performance, nor offer her any coaching to correct the alleged job performance deficiencies;" and from May 2010 through her termination, she was "consistently subjected to unwarranted discipline."   (*Id.* at 6.)

Defendants, however, have provided a copy of Plaintiff's disciplinary record, including warnings for violations of attendance policy as early as January 2005, and violations of work-performance policy in 2005, 2006, 2008, and 2009.   (Docket no. 9-3.)   Plaintiff also received a "First Written Warning" for seven attendance violations (tardy six times and one unexcused absence) on April 28, 2010 (*id.* at 16); she was cautioned to bring up her productivity level on May 4, 2010 (*id.* at 17); she was noted to have "large gaps" in follow-up on her accounts

4

on June 3, 2010 (*id.* at 18); and she received a "Second Written Warning" regarding her attendance (tardy four more times and two additional unexcused absences) on November 23, 2010 (*id.* at 19). Additionally, while Plaintiff's "Final Warning" on December 22, 2010, referenced her attendance problems, the primary violation was "unsatisfactory and incomplete work performance" based on a failure to follow up with accounts.   (*Id.* at 20.)

Plaintiff alleges that "as a result of providing notice to DMC of her impending FMLA leaves and exercising her FMLA rights, [she] suffered adverse employment actions," including treating her more harshly than other employees, issuing the final warning, falsely accusing Plaintiff of poor work performance to justify her termination, and ultimately, her termination. (Docket no. 1-1 at 7-8.)   She further alleges that DMC unlawfully "prevented [her] from exercising her right to take required family medical leave of absence" and that DMC further violated the FMLA when it "refus[ed] to permit [her] to resume her position as a Patient Accounting Representative after being unjustly terminated from employment under the pretext of poor work performance and firing her."   (*Id.* at 8-9.)   Plaintiff seeks monetary damages and equitable relief.   (*Id.* at 9-10.)

### B.    Governing Law

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.   The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."   *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).   To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the

assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## C.     Analysis

Defendants assert that Plaintiff's claims are barred by the applicable statute of limitations. (Docket no. 9 at 15-21.) Alternatively, Defendants contend that Plaintiff has failed to properly allege a facially plausible causal connection between her request for FMLA leave and Defendants' allegedly unlawful conduct. (*Id.* at 21-24.)

### 1.     Statute of Limitations

Generally, a Plaintiff may commence an FMLA action at any time "not later than 2 years

6

after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617 (c)(1).   An FMLA action is deemed to have commenced on the date when the complaint is filed.   29 U.S.C. § 2617(c)(3).   Defendant terminated Plaintiff on November 16, 2011.   Thus, for Plaintiff's Complaint to fall within the general FMLA limitations period established by 29 U.S.C. § 2617 (c)(1), she would have had to file it on or November 16, 2013. Plaintiff filed her Complaint on November 17, 2014; therefore, her FMLA claims do not fall within the general limitations period.

Nevertheless, the FMLA has a three-year limitations period for claims that an employer "willfully" violated an employee's FMLA rights.   29 U.S.C. § 2617(c)(2).   Because Plaintiff's complaint was filed more than two but less than three years after her termination,[5] her FMLA claims can survive dismissal under Fed. R. Civ. P. 12(b)(6) only if her Complaint plausibly alleges that Defendants acted in willful violation of her FMLA rights.

An employer's FMLA violation is "willful" when the employer acts with knowledge that its conduct is prohibited by the FMLA or it acts with reckless disregard of the FMLA's requirements.   *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004).   Even assuming, *arguendo*, that Defendants violated Plaintiff's FMLA rights by terminating her for FMLA-related absences, nothing in her Complaint or associated documents provided by Defendant support a finding of willfulness.

With regard to the DMC itself, Plaintiff alleges that after receiving FMLA leave in 2007, 2008, and 2009, she filed the at-issue request in May 2010.   The DMO informed her that the

---

[5] Although Plaintiff filed her Complaint three years and one day after her termination, November 16, 2014, was a Sunday.   Therefore, pursuant to Fed. R. Civ. P. 6(a)(C), her Complaint was filed within the three-year limit.

documentation was insufficient to grant her claim, so she resubmitted the application.   And, ultimately, Plaintiff acknowledges that her request was approved, effective November 1, 2010. (Docket no. 1-1 ¶31.)   Thus, Plaintiff does not allege that she was refused FMLA leave; instead, she alleges that DMC did not approve her leave in a timely manner.   But such a delay does not support any claim that DMC knew it was violating Plaintiff's rights or that it acted with reckless disregard.   At most, accepting Plaintiff's factual allegations as true, DMC's delay resulted from negligence.

With regard to Defendants Tinsley and Bradford, although Plaintiff alleges that they knew of her FMLA requests and that they intentionally violated her rights, none of the factual allegations in Plaintiff's Complaint plausibly support such a finding.   Plaintiff herself acknowledges that she was unaware that her FMLA request was approved until after she was terminated; Plaintiff does not allege that Defendants Tinsley or Bradford were ever aware of the approval.   Thus, a willful violation of the FMLA is implausible.   But even assuming Defendants Tinsley and Bradford were aware of the FMLA approval, Plaintiff was written up in December of 2010 (in part) for three unexcused absences and ten tardy violations in 2010, but only one absence and two tardy violations occurred after the November 1, 2010 effective date of her FMLA leave.   And as discussed further herein, nothing in the Complaint or Plaintiff's disciplinary record indicates that Defendants took action against her because of her attendance record or because of her FMLA leave; Defendants were primarily concerned with Plaintiff's unsatisfactory performance.

In short, while Plaintiff claims that Defendants "deliberately engaged in intentional violations of the FMLA," that they "acted with malice and/or with reckless disregard," that they "disregarded DMC's personal policies and procedures," and that they were "well aware that

8

[Plaintiff] had sought and was qualified of FMLA-eligible leave in the pass (sic)," Plaintiff's allegations do no support a plausible claim for a willful FMLA violation. At most, Plaintiff's claims state a negligent violation of the act by the DMC through lost paperwork and miscommunication. And even if Defendants Bradford and Tinsley knew that her 2010 FMLA request was approved in November 2010, none of Plaintiff's allegations support a claim that they knowingly violated her rights or acted with a reckless disregard when they terminated her for attendance violations prior to the effective date of her 2010 leave coupled with unsatisfactory work performance. Therefore, Plaintiff cannot avail herself of the three-year statute of limitations in 29 U.S.C. § 2617(c)(2), and her claims must be dismissed.

## 2. Causal Connection

In a closely related argument, Defendants assert that Plaintiff cannot show any causal connection between her termination and her FMLA leave. That is, Defendants assert that Plaintiff was terminated more than a year after her 2010 FMLA request and that she was terminated for performance reasons, not because of her absences or her request for leave. The undersigned agrees.

To make out a claim for retaliation under the FMLA, Plaintiff must show that "(1) [she] availed herself of a right that is protected under the FMLA; (2) [she] suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action." *Canitia v. Yellow Freight*, 903 F.2d 1064, 1066 (6th Cir. 1990). That is, the plaintiff must demonstrate that the defendants "intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right." *Spurlock v. Peterbilt Motors Co.*, Inc., 58 Fed. Appx. 630, 631 (6th Cir. 2003) (quoting *Stickland v. Water*

*Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001)).  While Plaintiff has suffered an adverse employment action, she has alleged nothing to show that the reason Defendant took that action was because Plaintiff had exercised an FMLA right.   Given that Plaintiff's termination did not occur for over a year after her FMLA request and that she took FMLA leave for nearly four years without incident, coupled with Plaintiff's disciplinary history at the time of her dismissal, the mere fact that Plaintiff was dismissed after taking FMLA leave is insufficient to state a plausible claim.   Therefore, Defendants' Motion should be granted with regard to Plaintiff's retaliation claim.

To prevail on an FMLA interference claim, a plaintiff must demonstrate that "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied [or interfered with] the employee['s] FMLA benefits to which she was entitled."  *Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014) (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).   Again, Plaintiff's complaint does not state a plausible claim of interference because she alleges that DMC did, in fact, grant her FMLA request. Therefore, Defendants' Motion should be granted with regard to Plaintiff's interference claim.

### 3.    Plaintiff's Request for Leave to Amend

In her Response to Defendant's Motion, Plaintiff asks the Court to deny Defendants' Motion but asks, in the alternative, that the Court provide an opportunity for her to amend her Complaint to avoid dismissal.   (Docket no. 13 at 29.)   Any such motion, however, is not before the Court as Plaintiff has not filed a Motion to Amend.   And even if the Court were inclined to consider Plaintiff's request, she has not complied with E.D. Mich. L.R. 15.1 by attaching her

proposed amended pleading.   Moreover, the documents referenced in Plaintiff's Complaint related to her disciplinary record and her FMLA requests do not support any allegations of willfulness.   Therefore, even if Plaintiff were to amend her Complaint, her claims would be barred by the applicable statute of limitations.   Plaintiff's request for leave to amend should be denied.

   **D.**  **Conclusion**

   For the reasons stated above, the undersigned recommends granting Defendant's Motion to Dismiss [9].   This matter should be dismissed in its entirety.

**III.** **Notice to Parties Regarding Objections**

   The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

   Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.

Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:   August 4, 2015                          s/ Mona K. Majzoub_____
                                                 MONA K. MAJZOUB
                                                 UNITED STATES MAGISTRATE JUDGE




**PROOF OF SERVICE**

        I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated:   August 4, 2015                          s/ Lisa C. Bartlett
                                                 Case Manager